**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IVAN KRASNOPOLSKII,

　　　　　　　　　　Petitioner,

v.

WARDEN, OTAY MESA DETENTION CENTER,

　　　　　　　　　　Respondent.

Case No.: 3:26-cv-00383-RBM-SBC

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**[Doc. 1]**

　　　　Pending before the Court is Petitioner Ivan Krasnopolskii's ("Petitioner") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). (Doc. 1.) For the reasons set forth below, the Petition is **GRANTED IN PART AND DENIED PART**.

## I.　　BACKGROUND

　　　　Petitioner, a native and citizen of Russia, entered the United States on or around January 7, 2022, and was subsequently admitted on parole. (*See* Doc. 1 at 6; Doc. 4 at 2.) On February 20, 2022, Petitioner was served with a Notice to Appear ("NTA") charging him as inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as a noncitizen "present without being admitted or paroled, or who arrived at any time or place other than designated, and [§] 212(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document at the time of application for admission." (Doc. 4 at 2; Doc. 4-1, Declaration of Rosendo Martinez ["Martinez Decl."] ¶ 5.)

1

On April 19, 2022, Petitioner left the United States and returned to Russia.  (Doc. 4 at 2.)  Petitioner re-entered the United States and applied for admission on May 19, 2023.  (Doc. 1 at 6.)  He "was served with a new NTA charging him with inadmissibility under INA § 212(a)(7)(A)(i)(I)."  (Doc. 4 at 2.)  On December 14, 2023, the United States Department of Homeland Security ("DHS") "filed an amendment to the NTA to add or substitute factual allegations."  (*Id*.; *see* Doc. 4-1 [Martinez Decl.] ¶ 7.)  On March 31, 2025, an immigration judge ("IJ") ordered Petitioner removed to Russia but granted him protection under the Convention Against Torture ("CAT").  (Doc. 1 at 6; *see* Doc. 1-3 at 1–11.)  Petitioner appealed the IJ's decision with the Board of Immigration Appeals ("BIA").  (Doc. 1 at 6.)  On November 20, 2025, before the BIA issued a ruling on his appeal, Petitioner voluntarily departed the United States.  (*Id*.; Doc. 4 at 2.)  On December 21, 2025, Petitioner returned to the United States and once again applied for admission.  (Doc. 4 at 2.)  "Upon arrival, [Petitioner] was taken into" the United States Immigration and Customs Enforcement's ("ICE") custody.  (Doc. 1 at 6.)

Petitioner, proceeding *pro se*, filed the instant Petition on January 21, 2026.  (Doc. 1.)  Respondents filed a Return in Opposition ("Response") on February 12, 2026.  (Doc. 4.)  Although Petitioner was allowed to file an optional reply on or before February 26, 2026 (*see* Doc. 2), Petitioner has not filed a reply as of the date of this Order.

## II.   <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

2

### III.   DISCUSSION

Petitioner claims he is being unlawfully detained at the Otay Mesa Detention Center in violation of the Fifth Amendment's Due Process Clause.  (Doc. 1 at 6.)  Respondents argue that the Petition should be denied because: (1) Petitioner's claims and requests are jurisdictionally barred under 8 U.S.C. § 1252(g); (2) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a); and (3) Petitioner's continued detention is not unconstitutionally prolonged.  (Doc. 4 at 4–10.)

#### A.   Jurisdiction

Respondents argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 4 at 4–5.)  This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]."  8 U.S.C § 1252(g).  However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Here, Petitioner challenges Respondents' decision to detain him "despite [his] ongoing fear of persecution and torture." (Doc. 1 at 6.)  This Court lacks jurisdiction over such a challenge because Petitioner's claim arises from "the decision or action" to execute his underlying removal order.  *See* 8 U.S.C. § 1252(g).  However, the Court has habeas jurisdiction over the remaining issues raised in the Petition, namely the lawfulness of Petitioner's continued detention and the process required in relation to third country removal.  *See Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (finding § 1252(g) did not limit jurisdiction where "Petitioners are enforcing their constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order.").

#### B.   Due Process

Petitioner claims that his "continued detention serves no legitimate purpose and has

become punitive rather than administrative." (Doc. 1 at 7.) Respondents argue that Petitioner is subject to a final removal order and therefore lawfully detained under 8 U.S.C. § 1231(a). (Doc. 4 at 9–11.)

"Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1092 (E.D. Cal. 2025) (quoting *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). After the entry of a final removal order, a noncitizen is subject to mandatory detention for 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1). As relevant here, the removal period begins when the removal order becomes administratively final. *See id.* § 1231(a)(1)(B)(i). Section 1231(a) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas v. Davis*, 553 U.S. 678, 682 (2001). The statute is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id*. at 689.

The Supreme Court has recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. *Id*. at 701. After the six-month period expires, Petitioner has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. Once this initial burden is met, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id*. If "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Id*. at 699–700.

In this case, an IJ ordered Petitioner removed and granted CAT protection on March 31, 2025. (Doc. 4 at 2.) Petitioner filed an appeal of the IJ's decision but left the United States before the BIA issued a ruling. (*Id.*; Doc. 1 at 6.) Petitioner's voluntary departure from the United States while his appeal was pending constitutes a withdrawal of his appeal.

4

3:26-cv-00383-RBM-SBC

*See Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 839 (9th Cir. 2003); 8 C.F.R. § 1003.4. Thus, Petitioner's order of removal became administratively final on March 31, 2025, and he is subject to detention under 8 U.S.C. § 1231(a). *See* 8 C.F.R. § 1003.4 ("[T]he initial decision in the case shall be final to the same extent as though no appeal had been taken.").

Petitioner was not in the United States during the removal period due to his voluntary departure. Indeed, the record before the Court indicates that Petitioner was not detained for the purpose of enforcing his final removal order until his most recent entry to the United States. "At this point, it was not a violation of due process, either substantive or procedural, for Respondents to detain Petitioner without notice so that the removal order could be carried out." *Guevara v. LaRose*, No. 26-CV-00342-BAS-DDL, 2026 WL 412479, at *2 (S.D. Cal. Feb. 13, 2026); *see Lin v. Francis*, 25 Civ. 10001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025) (concluding, "as have other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the government's ability to detain Petitioner without notice for the purpose of enforcing that removal order at this time i.e., years later.") (quoting *Piao v. Lyons*, Case No. 1:25-cv-1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025)).[1]

Nor has Petitioner's detention become unconstitutionally prolonged. Petitioner was detained on December 21, 2025, and the six-month presumptively reasonable period of detention therefore expires on June 21, 2026. Because Petitioner has been in post-removal detention for about three months, his detention is still presumptively reasonable.

Many district courts, including this Court, have found that the six-month presumption is rebuttable. *See Ndandu v. Noem*, —F. Supp. 3d— , 2026 WL 25848, at *3–4 (S.D. Cal. Jan. 5, 2026) (citing cases). "[W]ithin the six-month period, 'the petitioner must claim and *prove* [ ] that his removal is not reasonably foreseeable' to overcome the

---

[1] To the extent Petitioner claims ICE was required to provide him with advance notice before detaining him upon his most recent arrival at a port of entry (*see* Doc. 1 at 6), this claim is **DENIED**.

presumption." *Id*. at *4 (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025)) (emphasis in original); *see Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) ("[T]he presumption scheme merely suggests that the burden the detainee must carry within the first six months . . . is a heavier one than after six months has elapsed."). However, Petitioner fails to provide any argument to overcome this presumption. *Cf. Ndandu*, 2026 WL 25848, at *4–6 (holding a petitioner, who was detained for less than six months, overcame presumption of reasonableness where he was granted deferral of removal to his home country, the government has unsuccessfully tried to remove him, and the government failed to identify any other countries willing to accept him).

Even if the presumptively reasonable period had passed, Petitioner raises no reason as to why his removal is not significantly likely in the foreseeable future. (*See generally* Doc. 1.) Petitioner therefore fails to satisfy his lesser, initial burden of demonstrating there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Accordingly, the Court finds that Petitioner's detention has not been unconstitutionally prolonged under *Zadvydas*. The Court acknowledges that Petitioner's detention may at some point become unreasonably prolonged and due process may, at that time, necessitate certain procedural safeguards. The Petition is therefore **<u>DENIED WITHOUT PREJUDICE</u>** to allow Petitioner to seek relief in the future, if necessary.

**C.   Third Country Removal**

Petitioner claims he "experienced new persecution while abroad" of which he "informed immigration officers" during his most recent entry into the United States but did not receive "a meaningful screening or review of his protection claims before" he was detained. (Doc. 1 at 6.)

The Government may not remove an individual to a third country without notice and an opportunity to respond. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Despite this requirement, this Court has previously held that Respondents must provide similar situated petitioners, who they actively sought to remove to a third country, with

6

adequate notice and an opportunity to be heard before removing them to a third country. *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *6 (S.D. Cal. Dec. 10, 2025); *see also Castillo v. Chestnut*, Case No. 1:25-cv-01296-SAB-HC, 2026 WL 121652, at *9–10 (E.D. Cal. Jan. 16, 2026).

In their Response, Respondents confirm that "ICE is actively seeking removal of Petitioner[ ] to a third country." (Doc. 4 at 10.)  For the same reasons discussed in *Azzo*, the Court **GRANTS** the Petition to the extent Petitioner seeks notice and an opportunity to be heard before removal to a third country.

## IV.    CONCLUSION

Based on the foregoing reasons, the Petition is **GRANTED IN PART AND DENIED IN PART**.

1. To the extent Petitioner seeks an order that he be given notice and an opportunity to be heard before removal to a third country, the Petition is **GRANTED**. Respondents are thereby **PROHIBITED** from removing Petitioner to a third country without notice and an opportunity to be heard.

2. The Petition is otherwise **DENIED WITHOUT PREJUDICE** to Petitioner seeking relief in the future, if necessary.

**IT IS SO ORDERED**.

DATE:  March 25, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

7

3:26-cv-00383-RBM-SBC